AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

FILED
APR 18 2019
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY DEPUTY CLERK

In the Matter of the Search of
**A black LG cell phone, with serial no. 801CYAS447032, CURRENTLY LOCATED AT an evidence locker for the Butte County Sheriff's Office, 5 Gillick Way, Oroville, CA 95965**

Case No. 2:19-SW-0329 KJN

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A-7, attached hereto and incorporated by reference.**

located in the Eastern District of California, there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| **21 U.S.C. § 841(a)(1)** | **Possession with Intent to Distribute Methamphetamine and Heroin** |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☑ Continued on the attached sheet.

☐ Delayed notice ____ days (give exact ending date if more than 30 ________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature]
*Applicant's signature*

Michael J. Martin, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: April 17, 2019

[signature]
*Judge's signature*

City and state: Sacramento, California

Kendall J. Newman, U.S. Magistrate Judge
*Printed name and title*

McGREGOR W. SCOTT
United States Attorney
JAMES R. CONOLLY
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| In the Matter of the Search of: (1) A black iPhone 7 plus, with UAG case; (2) A silver LG Aristo cell phone, with IMEI #359998088743218, and telephone number 530-353-1024; with serial no. 708VTTD874321; (3) A black Alcatel A405DL cell phone, with IMEI #015114003993393; model A405DL; (4) A Telcel cellphone SIM Card, with serial no. #8952020016 / 631555741F; (5) A silver LG flip phone, having the phone number 530-682-7363; with serial no. 405CYSF0876862; (6) A black LG Metro PCS cell phone, with serial no. 302KPPB1257824; (7) A black LG cell phone; with serial no. 801CYAS447032; (8) A black LG K20 plus cell phone, with copper edge; with serial no. 703CYXM134466; and (9) A pink iPhone 6s, with a pink case, CURRENTLY LOCATED AT an evidence locker for the Butte County Sheriff's Office, 5 Gillick Way, Oroville, CA 95965 | CASE NO. OMNIBUS AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH DEVICES |
|---|---|

1. I, Michael J. Martin, being first duly sworn, hereby depose and state as follows:

## I. INTRODUCTION AND AGENT BACKGROUND

2. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic

device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

3. I am a special agent with the U.S. Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), currently assigned to the Office of the Resident Agent in Charge in Redding, California. I have been employed by ICE since March 2008.

4. As a Special Agent I have conducted and participated in investigations involving narcotics trafficking, weapons trafficking, child exploitation, benefit fraud, intellectual property crimes, embezzlement, money laundering and national security. I have participated in the execution of numerous search warrants and arrest warrants. I have conducted interviews with witnesses, suspects, confidential informants and victims. I have testified in various federal court proceedings. I have participated in a Title III Wire Intercept narcotics trafficking investigation. Part of my duties as an HSI special agent include the investigation of criminal violations relating to the distribution of controlled substances in violation of 21 U.S.C. § 841. I have successfully graduated from the Criminal Investigator Training Program and the U.S. Immigration and Customs Enforcement Special Agent Training Program, both held at the Federal Law Enforcement Training Center in Glynco, GA. Therefore, I am a "Federal law enforcement officer" within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure, that is, a federal law enforcement agent engaged in enforcing criminal laws and authorized to request a search warrant.

5. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## II. IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6. The property to be searched includes the following electronic devices (collectively, "**the Devices**"), which are also identified in Attachments A-1 through A-9:

| Device # | Description |
|---|---|
| **1.** | **A black iPhone 7 plus, with UAG case** |
| **2.** | **A silver LG Aristo cell phone, with IMEI #359998088743218, and telephone number 530-353-1024; with serial no. 708VTTD874321** |
| **3.** | **A black Alcatel A405DL cell phone, with IMEI #015114003993393; model A405DL** |
| **4.** | **A Telcel cellphone SIM Card, with serial no. #8952020016 / 631555741F** |
| **5.** | **A silver LG flip phone, having the phone number 530-682-7363; with serial no. 405CYSF0876862** |
| **6.** | **A black LG Metro PCS cell phone; with serial no. 302KPPB1257824** |
| **7.** | **A black LG cell phone; with serial no. 801CYAS447032** |
| **8.** | **A black LG K20 plus cell phone, with copper edge; with serial no. 703CYXM134466** |
| **9.** | **A pink iPhone 6s, with a pink case** |

The **Devices** are currently located at an evidence locker for the Butte County Sheriff's Office, 5 Gillick Way, Oroville, CA 95965.

7. The applied-for warrant would authorize the forensic examination of the **Devices** for the purpose of identifying electronically stored data particularly described in Attachment B.[1]

## III. PROBABLE CAUSE

8. On January 4, 2019, a Customs & Border Protection (CBP) Officer at the Cincinnati, Ohio, DHL Express Consignment facility noted a non-manifested can of material from Durango, Mexico, containing several boxes. An x-ray showed anomalies in one box, indicating that the contents of the box did not match the description on the manifest. A narcotics dog alerted during a sniff search of the box, indicating the possible presence of narcotics.

9. Inside the box, officers found factory-sealed bags of individually-wrapped lollipops with plastic capsules concealed in them, containing roughly 20 grams of methamphetamine per lollipop (agents selected a random sample of the suspected methamphetamine from one lollipop and tested it,

[1] Believing in good faith that the state search warrants agents had at the time of GANDARA-SOTO's arrest for the house and property to which the narcotics delivery was addressed extended to the electronic devices found at the scene, agents have already started the process of forensically examining some of the devices contained in this warrant. Out of an abundance of caution, the United States now seeks warrants for these Devices to satisfy the Court that there is sufficient probable cause to search all of the Devices.

finding it to be presumptively positive for the presence of methamphetamine). CBP agents inspected a second box with the same shipping information and found the same candy inside. In total, the boxes contained 201 lollipops and the suspected methamphetamine recovered weighed approximately 3.99 kg (8.7 pounds). Both packages were addressed to "Henry REYNOSA, 198 Sheldon Avenue, Gridley, California," from "Omar CUELLAR," in Durango, Mexico. CBP turned over the two boxes to HSI in the Eastern District of California for further investigation.

10. Agents from the Butte County Narcotics Interdiction Task Force (BINTF), including HSI agents and Butte County Sheriff's deputies, assembled duplicate packages, containing non-contraband lollipops, with GPS tracking devices and a beeper to alert agents when each box was opened.

11. On January 9, 2019, a Butte County Sheriff Deputy obtained an anticipatory search warrant for the residence and property at 198 Sheldon Avenue, Gridley. On the day of the delivery, a BINTF undercover Agent ( "UC"), dressed as a DHL courier, drove the packages to 198 Sheldon Avenue. As the UC agent drove up property's driveway, he saw two men in a Ford F150 with Durango, Mexico license plate FK-1096-A, driving toward him. On seeing the DHL van, the driver reversed the Ford F150, and backed up all the way to the house. Agents later identified the driver as Noe GANDARA-SOTO, and the passenger as Henry REYNOSO - a small spelling difference from the listed addressee, Henry REYNOSA.

12. The UC got out of his van and walked up to the men at the Ford F150, asked which one was "Henry," and handed the packages to REYNOSO when he responded. At the time the agent handed the packages to the men, their truck was parked immediately in front of the house. Once he had handed the packages to REYNOSO, the UC departed.

13. A short time later, after one of the packages had been opened, agents drove up the driveway, converged on the truck, and apprehended GANDARA-SOTO, who was standing outside his vehicle. REYNOSO tried to flee, but he was caught running from the vehicle. In the process, however, he dropped a cell phone and his U.S. passport, which officers recovered. This cell phone was later identified as **Device #1**.

14. At the time of the arrest, the back door to the passenger cab of the truck was open, and on the back seat, were the two DHL shipping boxes. One of them had been opened. Agents later learned

the beeper had been removed and thrown away (agents later found it near by). At the scene, officers seized two cell phones from the cab of the Ford F-150 (**Device #2** and **Device #3**), and one cell phone SIM card (**Device #4**), Agents also recovered one cell phone from the person of GANDARA-SOTO (**Device #5**).

15. At the scene, agents issued GANDARA-SOTO a *Miranda* warning, and he agreed to speak with them. He indicated that he lived at 152 Little Ranch Road, where he had been for the past five years. His California driver's license, however, indicated an address of 40 Watt Lane, Oroville. The truck also contained paperwork bearing GANDARA-SOTO's name, with an address of 40 Watt Lane. GANDARA-SOTO stated the packages were intended for him, and he had used Henry REYNOSO's name without telling him why. GANDARA-SOTO indicated that he had been in contact with the party who sent him the packages for one year.

16. Agents queried DMV records and found that GANDARA-SOTO had a mailing address of 40 Watt Lane, Oroville, as of May 2017, but had lived at 152 Little Ranch Road, Oroville, as of November 2012. Noe and Gladys GANDARA are the listed owners of 40 Watt Lane.

17. Based on this information, and the probable cause generated from GANDARA-SOTO's arrest, as described above (including receipt of the packages, their discarding the beeper, REYNOSO's attempt to flee, etc.), agents obtained state search warrants for both 40 Watt Lane and 152 Little Ranch Road. While agents waited to get word the warrants were complete, GANDARA-SOTO's wife, Gladys REYNOSO GANDARA, and their three children, arrived at 40 Watt Lane, driving an Acura MDX car. She indicated that she lived at 40 Watt Lane, with GANDARA-SOTO and their three children.

18. During a search of 40 Watt Lane, officers found in the kitchen a clear bag containing 87.7 grams of suspected heroin sitting on cupboard shelf. In the master bedroom, agents found the following: $7,100 dollars in cash; 0.42 grams of cocaine, in a clear plastic bag, in a closet; a Mexican passport belonging to Noe GANDARA-SOTO; a Kimber Raptor 2 - 45 caliber pistol (loaded), near the bed; a Smith and Wesson - 22 caliber pistol (loaded); miscellaneous 22 caliber and 45 caliber ammunition; and a "Jesus Malverde"[2] belt buckle and key chain in the master bedroom.

[2] Jesus Malverde is a folklore hero from Sinaloa, Mexico, often described as a "Robin Hood"-type individual. While legends about him involve his stealing from the rich and giving to the poor, he is

19. In a trailer parked on the property, behind the house, agents found additional narcotics and indicia of drug dealing, including: 447.0 grams of suspected methamphetamine in a yellow Forever 21 bag under a mattress; 194. 3 grams of suspected methamphetamine in the bedroom dresser; 0.52 grams net weight of loose suspected methamphetamine in a separate drawer; 195.4 grams of suspected heroin in a clear plastic bag in a kitchen cabinet; a digital scale; other drug paraphernalia coated with suspected heroin residue; a box of .22 caliber ammunition on the kitchen counter; and a box of .38 caliber ammunition in a kitchen cabinet.

20. Agents seized three cell phones in the residence at 40 Watt Lane (**Device #6**, **Device #7**, and **Device #8**).

21. Agents searched the Acura MDX in which Gladys GANDARA had arrived and found an envelope containing $1,200 cash. Agents also found in the Acura MDX an additional iPhone (a mobile telephone) (**Device #9**).

22. The **Devices** are currently in the lawful possession of Homeland Security Investigations. Therefore, while the Homeland Security Investigations might already have all necessary authority to examine the **Devices**, I seek this additional warrant out of an abundance of caution to be certain that an examination of the **Devices** will comply with the Fourth Amendment and other applicable laws.

## IV. TECHNICAL TERMS

23. Based on my training and experience, I use the following technical terms to convey the following meanings:

a) Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.

---

more commonly thought of as a patron "saint" of narco-traffickers.

These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b) Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c) Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d) GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24

NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e) Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

f) IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static-that is, long-term-IP addresses, while other computers have dynamic-that is, frequently changed-IP addresses.

g) Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state..

24. Based on my training, experience, and research, I know that the "smart phones" gathered during the investigation, including **Devices #1, 2, 6, 7, 8,** and **9**, have capabilities that allow them to

serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA, as well as access the internet. The cell phone sim card found, **Device #4**, is designed to store the memory of a mobile telephone, which stores photographs, contact information, digital media, and GPS history depending on the type of phone for which it was being used. The cell phone described as a "flip phone," (**Device #5**) has less functionality than smart phones, but can still function as a mobile telephone, a digital camera, a portable media player, and a PDA. In my training and experience, examining data stored on devices of these types can uncover, among other things, evidence that reveals or suggests who possessed or used the device, and the purposes for which they used it.

## V. ELECTRONIC STORAGE AND FORENSIC ANALYSIS

25. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

26. Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a) Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b) Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c) A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

      d) The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e) Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

27. Nature of examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

28. Manner of execution. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## VI. CONCLUSION

29. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

30. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that, online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online

criminals as they deem appropriate, i.e., post them publicly online. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

Michael J. Martin
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on: April 17, 2019

The Honorable Kendall J. Newman
UNITED STATES MAGISTRATE JUDGE

Approved as to form by AUSA JAMES R. CONOLLY

## ATTACHMENT A-7

The property to be searched is a **black LG cell phone, with serial no. 801CYAS447032. ("Device #7")**

The Device is currently located at an evidence locker for the Butte County Sheriff's Office, 5 Gillick Way, Oroville, CA 95965.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

1. All records on the **Device** described in Attachment A-(1 through 9) that relate to violations of 21 U.S.C. § 841(a)(1), possession with intent to distribute methamphetamine and heroin, and involve Noe GANDARA-SOTO, since November 1, 2017, including:

a. Communication information, including the date, time, and duration of the communication, and the following, without geographic limit:

i. IP addresses associated with the **Device** used to send or receive electronic communications (including text messages, emails, or other messages sent across messaging applications, including, but not limited to WhatsApp, Snapchat, Twitter, etc.);

ii. IP addresses of any websites or other servers to which the **Device** connected;

iii. Source and destination telephone numbers and email addresses;

b. lists of customers and related identifying information;

c. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

d. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

e. any information recording GANDARA-SOTO's schedule or travel from November 1, 2017, to the present;

f. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the **Device** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. Records evidencing the use of the **Device** to access the internet, including:

a. records of Internet Protocol addresses used;

b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

In the Matter of the Search of

**A black LG cell phone, with serial no. 801CYAS447032, CURRENTLY LOCATED AT an evidence locker for the Butte County Sheriff's Office, 5 Gillick Way, Oroville, CA 95965**

Case No. 2:19-SW-0329 KJN

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Eastern District of California *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A-7, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before May 1, 2019 *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: any authorized U.S. Magistrate Judge in the Eastern District of California.

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for ____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of ________.

Date and time issued: April 17, 2019 3:20 pm

[signature]
*Judge's signature*

City and state: Sacramento, California

Kendall J. Newman, U.S. Magistrate Judge
*Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

Subscribed, sworn to, and returned before me this date.

Signature of Judge

Date

**ATTACHMENT A-7**

The property to be searched is a **black LG cell phone, with serial no. 801CYAS447032. ("Device #7")**

The Device is currently located at an evidence locker for the Butte County Sheriff's Office, 5 Gillick Way, Oroville, CA 95965.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

1. All records on the **Device** described in Attachment A-(1 through 9) that relate to violations of 21 U.S.C. § 841(a)(1), possession with intent to distribute methamphetamine and heroin, and involve Noe GANDARA-SOTO, since November 1, 2017, including:

   a. Communication information, including the date, time, and duration of the communication, and the following, without geographic limit:

      i. IP addresses associated with the **Device** used to send or receive electronic communications (including text messages, emails, or other messages sent across messaging applications, including, but not limited to WhatsApp, Snapchat, Twitter, etc.);

      ii. IP addresses of any websites or other servers to which the **Device** connected;

      iii. Source and destination telephone numbers and email addresses;

   b. lists of customers and related identifying information;

   c. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   d. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   e. any information recording GANDARA-SOTO's schedule or travel from November 1, 2017, to the present;

   f. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the **Device** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. Records evidencing the use of the **Device** to access the internet, including:

   a. records of Internet Protocol addresses used;

   b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.